UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDY KATO-HARRIS LOVE,

                Petitioner,                Case Number 2:08-CV-15282
                                          Honorable Lawrence P. Zatkoff

v.

JEFFREY WOODS,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Freddy Kato-Harris Love's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254[1].  Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree murder,  MICH. COMP. LAWS 750.316, felon in possession of a firearm, MICH. COMP. LAWS 750.224f, and commission of a felony with a firearm. MICH. COMP. LAWS 750.227b.  For the reasons that follow, the Court denies the petition and denies a certificate of appealability.

### I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

On July 14, 2002, the victim was sitting in his mother's car with two friends

---

[1]Petitioner has been transferred to the Chippewa Correctional Facility.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254.  Therefore, the Court substitutes Warden Jeffrey Woods in the caption.

in front of his house in Detroit.  Shantel Williams arrived and walked up to them, talking to them through the open driver's window.  When Williams saw a man run up to the vehicle with a rifle, she backed up and saw the man fire somewhere around twenty gunshots into the driver's window.  The victim died, and at least seventeen gunshot wounds were found on his body.  Both of the victim's friends were injured but survived.  At a police lineup, Williams identified defendant as the shooter.

According to the testimony of several witnesses, defendant and the victim had an ongoing feud.  Two witnesses recounted an incident where defendant fired a gun at the victim three to four months before the victim was killed, and one of them testified that the victim may have fired one gunshot back at defendant.  A third witness testified that the victim fired gunshots at defendant three to four months before the victim was killed.

*People v. Love*, 2004 Mich. App. LEXIS 3110, *1-2 (Mich. Ct. App. Nov. 16, 2004).

After his trial, Petitioner filed an appeal of right in the Michigan Court of Appeals.  His appellate brief raised four claims::

I. Petitioner's constitutional right to a fair trial was violated when the trial court permitted the jury to be influenced by factors external to the proofs adduced at trial.

II. Petitioner was denied a fair trial and the effective assistance of counsel by his attorney's failure to request the appointment of an expert on eyewitness identification.

III. Petitioner was denied his due process right to a fair trial where in his closing argument, the Prosecutor argued for sympathy for his identifying witness, made civic duty arguments and denigrated the defense.

IV. The trial court erred in excluding, on hearsay grounds, a statement by the deceased that he was afraid of a Mr. Cleland, because that statement was admissible as a statement of the deceased's then-existing state of mind, intent, motive, or design, in violation of due process of law.

The court of appeals affirmed Petitioner's conviction in an unpublished opinion.  *Id.*  Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims. The application for leave to appeal was denied in a standard order.  *People v. Love*, 474 Mich. 854; 702 N.W.2d 582 (2005).

Petitioner returned to the trial court and filed a motion for relief from judgment. Neither party has set forth the claims raised in this motion, and a copy of the motion was not included with the Rule 5 materials. Nevertheless, the state trial court's opinion denying the motion states that it raised a number of claims of ineffective assistance of appellate counsel. The opinion goes on to state that the substantive claims underlying the ineffective assistance of appellate counsel claim were inadequately briefed because Petitioner failed to "factually articulate the issues and provide a legal basis." Opinion of Trial Court dated October 2, 2007, at 2. The court went on to deny the motion for relief from judgment because "defendant has not fulfilled his burden under Michigan Court Rule 6.508(D)(3)(a) to establish good cause for his failure to raise the above issues on appeal or in a prior motion." Id.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, articulating the following five claims:

I. Defendant's Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process were both violated by appellate counsel's acts and omissions establishing cause for the procedural defaults.

II. Defendant's Sixth Amendment right to a fair trial was violated by the trial court abusing its discretion, when it failed to conduct a hearing, after becoming aware that Juror #12 brought in an extraneous act and discussed her findings with the jury.

III. Defendant's Sixth Amendment right to a fair trial, and Fourteenth Amendment right to due process were both violated when the trial court abused its discretion by admitting the 404(b) evidence.

IV. Defendant's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process were both violated when the prosecutor made improper arguments and misused the 404(b) evidence.

V. Defendant's Sixth Amendment right to the effective assistance of counsel, a fair trial, and his Fourteenth Amendment right to due process were both violated by trial counsel's acts and omissions.

The Michigan Court of Appeals denied the application for leave to appeal for failure to

-3-

"establish entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Love*, No. 282255 (Mich. Ct. App. June 2, 2008). Petitioner then appealed to the Michigan Supreme Court, again raising the same claims, but this application for leave to appeal was also denied by citation to Rule 6.508(D). *People v. Kato-Harris Love*, 482 Mich. 1066, 757 N.W.2d 445 (2008).

Petitioner then filed the instant petition, enumerating eight claims:

I.. The exclusion of testimony from a defense witness was highly unfair, denied due process and the right to put on a defense, and was not justified by any important consideration.

II. Petitioner was denied due process where the court permitted the jury to be influenced by factors external to the proofs at trial.

III. Petitioner was prejudiced by ineffective assistance of counsel where defense counsel failed to secure testimony of an expert witness on identification.

IV. Petitioner was prejudiced by improper prosecutor argument seeking sympathy for the complaining witness, ridiculing the trial process and making civic duty arguments.

V. Petitioner was prejudiced by improper admission of testimony of other bad acts.

VI. Petitioner was prejudiced by additional improper prosecutor argument.

VII. Petitioner was prejudiced by ineffective assistance of counsel in various additional ways.

VIII. Petitioner was prejudiced by ineffective assistance of counsel on appeal.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

-4-

States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Even where a state court does not explain the rationale for its decision reject a claim on the merits, "a habeas court must determine what arguments or theories supported or . . .

-5-

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.   "[I]f this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. 786.

### III. Analysis

### A.  Exclusion of Defense Evidence

Petitioner first claims that his right to present a defense was violated when the trial court prohibited defense witness James Lomax from testifying that the victim and Petitioner had made-up, but that the victim was still afraid of a man identified as "Cleland."  Respondent asserts that the state appellate court reasonably decided this claim against Petitioner on the merits.

As an initial matter, to the extent that Petitioner asserts that the evidence should have been admissible under Michigan Rule of Evidence 803(3), the only rule relied on by his trial counsel, he is not entitled to relief from this Court.  A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo*, 809 F.2d at 328.  Moreover, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354.  Only when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, may it violate due process and warrant federal habeas relief. *See Bugh*, 329 F.3d at 512.  Petitioner's new alternative argument, that

-6-

the evidence was admissible under Michigan Rule of Evidence 803(2), was never presented to the state courts.

As for the federal aspect of Petitioner's claim, the right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *Scheffer*, 523 U.S. at 308. As explained by the Supreme Court, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.... [T]he Constitution permits judges "to exclude evidence that is 'repetitive ... only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted).

Excluded evidence violates the right to present a defense only if the exclusion is arbitrary or disproportionate to the purpose it was designed to serve or infringes on a weighty interest of the accused. *Scheffer*, 523 U.S. at 308. "A defendant's interest in presenting... evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (*quoting California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

The Michigan Court of Appeals denied relief on this claim as follows:

-7-

Defendant next argues that the trial court erred in excluding testimony of a statement that the victim allegedly made regarding "Cleland." A trial court's decision whether to admit evidence is reviewed for abuse of discretion. *People v. Katt*, 468 Mich. 272, 278; 662 N.W.2d 12 (2003).

Defendant attempted to introduce evidence that the victim had told his friend that he was afraid of someone named "Cleland." Defendant argued that, although hearsay, the statement should be admitted pursuant to Michigan Court Rule 803(3) as a then-existing mental, emotional, or physical condition. The trial court did not admit the statement because it was not a material issue or relevant to the case.

Normally, relevant evidence is admissible, and irrelevant evidence is not. MICH. RULE EVID. 402. If it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence, then the evidence is relevant. MICH. RULE EVID. 401. To be material and relevant, evidence does not need to relate to an element of the charged crime or an applicable defense, but may concern the relationship of the elements of the charge, the theories of admissibility, and the defenses. *People v. Brooks*, 453 Mich. 511, 518; 557 N.W.2d 106 (1996); *Kevorkian*, *supra* at 442.

We conclude that the trial court did not abuse its discretion in refusing to admit the victim's statement that the victim was afraid of someone named "Cleland." There was no evidence linking "Cleland" to the shooting, or evidence of an "ongoing feud" between Cleland and the victim that would tend to make it more likely that Cleland was involved in the victim's death. The fact that the victim may have been afraid of someone else in no way made it more or less probable that defendant was the shooter.

*Love*, 2004 Mich. App. LEXIS 3110, *14-15.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Generally, evidence of third party culpability is not admissible unless there is substantial evidence directly connecting that person with the offense. *Andrews v. Stegall*, 11 Fed. Appx. 394, 396 (6th Cir. Mich. 2001) (citing *Walters v. McCormick*, 122 F.3d 1172, 1177 (9th Cir. 1997)). The Eleventh Circuit Court of Appeals has noted that:

The decision of whether the exclusion of testimony amounts to a denial of fundamental fairness violative of the due process clause requires a balancing of interests: 'The defendant certainly has a strong interest in presenting exculpatory evidence, but the state has an interest in promoting reliable trials, particularly in

preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party. Due process may require a trial court to allow the introduction of evidence of another party's possible guilt when there is some showing of a nexus between the other party and the particular crime with which a defendant is charged.'

*Card v. Dugger*, 911 F.2d 1494, 1514 -1515 (11th Cir. 1990)(quoting *Cikora v. Dugger*, 840 F.2d 893, 898 (11th Cir.1988) (footnote omitted)). Here, there was absolutely no evidence connecting "Cleland" to the crime other than the challenged hearsay. Indeed, no offer of proof was made as to this person's full identity, that he exists at all, or any connection to the victim.

Moreover, as stated by the Sixth Circuit in *Andrews*, Petitioner's

attempt to analogize this case to that of *Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973), is meritless. In that case, the Supreme Court held that evidence that a third party had confessed to several of his friends shortly after the murder should have been admitted, as the third party was also seen with a gun immediately after the shooting, and was available for cross- examination. This case, on the contrary, concerns a vague threat that was allegedly made some unknown time before the murder, to the victim's stepson. Maurice was not shown to have been anywhere near the scene of the crime, and was not available to testify.

11 Fed. Appx. at 396. Here, not only was there no evidence that "Cleland" was anywhere near the scene of the crime, there was no evidence proffered that he was a real person. Without more evidence connecting "Cleland" to the victim or the crime, Petitioner's due process rights were not violated by the exclusion of this evidence.

As for Petitioner's claim that Petitioner was prevented from introducing evidence that he and the victim had settled their differences at the time of the shooting, no such blanket prohibition occurred. Lomax testified that he was with the victim in his car when they pulled-up to Petitioner. He observed them talk and smoke marijuana together and it appeared to him that they had settled their differences. T 6/9/2003, at 81-86, 99-100. He also testified that there were problems in the neighborhood at the time of the fatal shooting involving the victim, but they did not involve

-9-

Petitioner.  Id., at 88.

The decision of the Michigan Court of Appeals is certainly not "a direct repudiation of *Chambers*" as Petitioner contends.  See Petitioner's Brief, at 10.  Rather, the state court decision complied with the dictates of clearly established Supreme Court law.  Habeas relief is not warranted on this claim.

### B.  Extraneous Influence on Jury

Petitioner's second claim asserts that the jury was influenced by an external influence. Specifically, he contends that one juror, Juror No. 2, went the scene of the crime and conducted an experiment at night regarding a person's ability to identify someone, and that another juror, Juror 12, conducted a similar experiment at her home.

"A defendant's Sixth Amendment rights are put in jeopardy when facts appear before a jury that were not developed at trial.  Such extraneous influence may threaten the guarantee of an impartial jury, and may trammel a defendant's right to confrontation and cross-examination." *Gall v. Parker*, 231 F.3d 265, 334 (6th Cir. 2000) (internal and end citations omitted), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003).  Thus, Petitioner states "a colorable constitutional claim, reviewable under § 2254, when he asserts that the juror[s'] consideration of improper extraneous influences violated his Sixth Amendment right to an impartial jury, as well as his right of confrontation and cross-examination." *Id.*

The United States Court of Appeals for the Sixth Circuit "has defined 'an extraneous influence on a juror [as] one derived from specific knowledge about or a relationship with either the parties or their witnesses.'" *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir.) (quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)), cert. denied, __ U.S. __, 128 S. Ct. 493, 169 L. Ed. 2d 346

-10-

(2007). One example of an extraneous influence is conducting an out-of-court experiment. *Id.*

However, jurors are presumed to be impartial, *see Irvin v. Dowd*, 366 U.S. 717, 723 (1961), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . Due process means a jury capable and willing to decide the case solely on the evidence before it . . . ." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The state appellate court denied Petitioner's claim as follows:

Defendant first argues that an extraneous influence on the jury constituted error requiring reversal and that the trial court abused its discretion in denying his motion for a mistrial. A trial court's decision to grant or deny a mistrial is reviewed for an abuse of discretion. *People v. Lett*, 466 Mich. 206, 223; 644 N.W.2d 743 (2002).

A defendant in a jury trial has a right to a fair and impartial jury. *People v. Budzyn*, 456 Mich. 77, 88; 566 N.W.2d 229 (1997). During their deliberations, jurors may only consider evidence presented to them in open court. *Id.* A defendant is denied his Sixth Amendment rights of confrontation, cross-examination, and assistance of counsel when the jury considers extraneous facts not introduced in evidence. *Id.*

In order to ascertain that the extrinsic influence was error requiring reversal, the defendant must first prove two points. *Budzyn, supra* at 88. Initially, the defendant must prove that the jury was exposed to an extraneous influence. *Id.* at 89. Then, the defendant must establish that this extraneous influence created a real and substantial possibility that it could have affected the jury's verdict. *Id.* In proving this second point, the defendant generally demonstrates that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict. *Id.* The following factors may also be considered in determining whether the extrinsic influence created a real and substantial possibility of prejudice: (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Budzyn, supra* at 89 n 11.] If the defendant establishes this initial burden, the burden shifts to the prosecution to demonstrate that the error was harmless beyond a reasonable doubt, which may be accomplished by proving that either the extraneous influence was duplicative of evidence produced at trial or that the evidence of guilt was overwhelming. *Budzyn,*

-11-

*supra* at 89-90.

During deliberations, Juror No. 2 went to the scene of the shooting to determine how close a dark-skinned person had to be to someone to enable a nighttime identification. Juror No. 2 solicited the help of a man who was in the area, and who happened to be the victim's stepbrother. Juror No. 2 had the victim's stepbrother walk toward her car, which was parked in the same location that the victim's car had been parked when he was shot. Juror No. 2 returned to deliberations the following morning and told the other jurors about her experiment. The other jurors began to protest to her words and told her that they did not want to hear her conclusions. They then told the court what had occurred. Juror No. 2 told the rest of the jury that the result of her experiment was that "it was too dark. You could not see."

There is no dispute that Juror No. 2 conducted this experiment, and that she attempted to tell the other jurors about the outcome. This occurred after deliberations began. Juror No. 2 stated that the other jurors' response was that they wanted her to tell the court what she had done and that they "wouldn't say anything to [her] but holler and fuss." The trial court immediately voir dired the jurors. All of the other jurors indicated that they had not personally been to the scene, that they tried to stop Juror No. 2 from revealing the results of her experiment, and that they would not be influenced by what she did tell them. All the jurors independently stated that they would base their decision solely on what they had seen and heard in the courtroom and not on any extrinsic evidence. Juror No. 2 was excused, and the trial court seated an alternate juror.

This case was primarily based on Williams' identification of defendant, because she was the sole eyewitness capable of identifying the shooter. Whether the lighting was adequate for Williams to identify defendant was a material aspect of the case. We do not, however, find a direct connection between the extrinsic material and the adverse verdict. Juror No. 2's statement that it was too dark to identify defendant could not have led to the adverse verdict. If the jurors had been influenced by the extrinsic evidence, they would have exonerated defendant. Further, the trial court conducted voir dire of the jurors, each of whom stated that any extraneous influence would not influence his or her verdict. Accordingly, we find that there was no error requiring reversal, and the trial court did not abuse its discretion in denying defendant's motion for mistrial.

*Love*, 2004 Mich. App. LEXIS 3110, *2-6.

This decision was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law. The record shows that upon learning of Juror No. 2's experiment at

-12-

the scene of the crime, a hearing was held to determine its impact on the jury.  Each juror was questioned under oath on the record, and each one swore that he or she could decide the case based on the evidence and was not influenced by what Juror No. 2 reported.

As observed by the Sixth Circuit:

> Where a colorable claim of extraneous influence has been raised, . . ., a "*Remmer* [*v. United States*, 347 U.S. 227 (1954)] hearing" must be held to afford the defendant an opportunity to establish actual bias.  At that hearing, the defendant bears the burden of proving actual juror bias, and no presumption of prejudice arises merely from the fact that improper contact occurred. . . .

*United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999) (internal quotes and citations omitted). "The nature and scope of the investigation required" was set forth by the Supreme Court in *Remmer*. *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000).  "The Supreme Court decided that a hearing was required to 'determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.'" *Id.* (quoting *Remmer*, 347 U.S. at 230).  "Although the Court stated that any extraneous contact with a juror was 'presumptively prejudicial,' and that the burden rested on the government to demonstrate that the contact was harmless, . . ., this court has understood the subsequent case of *Smith v. Phillips*, 455 U.S. 209 (1982), to alter that holding such that the defendant now bears the burden of proving juror bias." *Id.* (internal citation omitted).

Here, the trial court conducted the required investigation and hearing after learning of the misconduct.  It found, after observing the testimony of the remaining jurors, that they were not affected by the conduct of Juror No. 2.  The Michigan Court of Appeals properly reviewed the record, concluding that  under the facts presented here that there was no error. Its decision that the trial court conducted an adequate *Remmer* hearing was a reasonable application of clearly established federal

-13-

law to the facts of this case.

Petitioner also asserts that the trial court failed to conduct a similar inquiry regarding Juror No. 12's observations. Juror No. 12 testified that while she was walking outside at night during the trial she recalled the eyewitness's testimony and made note of her own ability to observe things at night. This was not really an experiment, but was more a case of a juror reflecting upon her own life experiences in judging the credibility of a witness. *Fields v. Brown*, 503 F.3d 755, 781 (9th Cir. 2007) (quoting *Hard v. Burlington Northern R.R. Co*., 870 F.2d 1454, 1461 (9th Cir. 1989) ("The type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room.")

But even setting this aside, there is a good reason neither the trial court nor the state appellate court addressed Juror No. 12's statement. After the *Remmer* hearing, the trial court asked defense counsel whether she had any motions to bring with respect to any jurors other than Juror No. 2, and she indicated that she did not. Tr. 6-12-03, at 81. Then, in the state appellate court, Petitioner never asserted that the conduct of Juror No. 12 constituted another extraneous influence. The issue was raised only with respect to Juror No. 2, and Juror No. 12 was not mentioned at all. This new allegation has not been fairly presented to the state courts and is therefore not properly before the Court. 28 U.S.C. § 2254(b).

## C.  Effective Assistance of Counsel

Petitioner next asserts that his trial counsel was ineffective for failing to hire an expert on eyewitness identification to testify at trial regarding the reliability of Shantel Williams's identification of Petitioner as the shooter.

-14-

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review

-15-

due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* at 788.

The Michigan Court of Appeals applied this standard and denied Petitioner's ineffective assistance of counsel claim as follows:

> Defendant next argues that he was denied affective assistance of counsel because defense counsel did not request an expert witness on eyewitness identification.  Because defendant failed to file a motion a for new trial on these grounds or request a *Ginther* n1 hearing, the issue of effectiveness of counsel has not been preserved for appellate review, and our review is limited to mistakes apparent on the record. *People v. Sabin* (On Second Remand), 242 Mich. App. 656, 658-659; 620 N.W.2d 19 (2000).  Whether a defendant has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v. LeBlanc*, 465 Mich. 575, 579; 640 N.W.2d 246 (2002).  We must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *Id.* We review a trial court's findings of fact for clear error and questions of constitutional law de novo. *Id.*

> n1 *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973).

> To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and that the resultant proceedings were fundamentally unfair or unreliable. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *People v. Rodgers*, 248 Mich. App. 702, 714; 645 N.W.2d 294 (2001).  To show that counsel's representation fell below the standard of reasonableness, a "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d 884 (2001).  We will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, we will not assess counsel's competence with the benefit of hindsight. *People v. Rice* (On Remand), 235 Mich. App. 429, 445; 597 N.W.2d 843 (1999).  Counsel's failure to call witnesses is

-16-

presumed to be trial strategy, and defendant has not overcome the strong presumption  that defense counsel's decision not to retain an expert witness constituted sound trial strategy. *People v. Mitchell*, 454 Mich. 145, 163; 560 N.W.2d 600 (1997).

Defense counsel vigorously questioned Williams on her identification, raising a possible discrepancy in her earlier testimony.  Corroborating Williams' identification of defendant as the shooter was defendant's ongoing feud with the victim and its violent background.  It was reasonable for defense counsel not to call an expert witness in eyewitness identification because he thoroughly examined Williams and she explained the discrepancy in her earlier testimony. At trial, Williams stated that she had seen the shooter's face.  Defense counsel confronted Williams with her testimony from the preliminary examination as follows:

Q. Mr. Hall the Prosecutor at that time asked you, I am starting at 117."Q You said that the person who was approaching you, he was within a couple of feet away.  Were you able to see his face." And you gave an answer, correct?

A. Right.  Read my answer.

Q. "A At that time I was backing away from [the victim]'s car so I couldn't really see his face."

A. Right, at that time, but I had saw his face prior to that.

Q. I think you said you saw his face when he was about two to four feet away?

A. Not while I was moving back.  I seen his face when he got to the car; when he got to, like the back end of the car.  While I was backing up, I didn't see his face, no, I didn't.  But I had already seen him before then.

Because defense counsel used the cross-examination to weaken Williams' identification testimony, counsel could have reasonably believed that expert testimony was unnecessary.  Further, defendant's ongoing feud with the victim gave him a possible motive for the shooting.  Accordingly, defendant has failed to demonstrate that trial counsel's performance was objectively unreasonable or that defendant was prejudiced by counsel's performance.

*Love*, 2004 Mich. App. LEXIS 3110, *9-10.

With regard to the failure to call an expert on eyewitness testimony, federal courts have held

-17-

that a defense attorney's cross examination of eyewitnesses is a  sufficient method of attempting to deal with the issues presented by eyewitness testimony. *See Davenport v. Curtis*, 2008 U.S. Dist. LEXIS 78231, 2008 WL 4534198, at *3 (E.D.Mich.), citing *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 791-92 (N.D.Ohio 2003), *Ferensic v. Birkett*, 501 F.3d 469, 483-84 (6th Cir. 2007), *Tipton v. United States*, No. 96-5026, 1996 U.S. App. LEXIS 25466, 1996 WL 549802 at *1-2 (6th Cir. 1996).  The failure to call an expert witness on eyewitness identification does not satisfy the *Strickland* standard where defense counsel made a tactical decision not to call such a witness, presented alibi witnesses, and cross-examined the eyewitnesses regarding inconsistencies in their identification of the petitioner. *See Dorch v. Smith*, 105 F. App'x 650, 657 (6th Cir. 2004).

That is exactly what happened in Petitioner's case.  His attorney presented two alibi witnesses, Charlotte Collins and Jonathan Vastine,  and he cross-examined Shantel Willimas concerning her identification of Petitioner.  Petitioner cannot show that failure to present an expert witness on eyewitness testimony as well amounted to ineffective assistance of counsel.  The decision of the state appellate court was reasonable, and Petitioner is therefore not entitled to habeas relief on this claim.

### D.  Conduct of the Prosecutor

Petitioner's fourth claim asserts that the prosecutor committed misconduct.  He asserts that the prosecutor improperly sought sympathy for the victim during his closing argument, and that he referred to the trial as "nonsense."  Respondent asserts that review of this claim is barred because Petitioner failed to object to the alleged error at trial.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default is

applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).

The  Michigan Court of Appeals rendered the last reasoned opinion on this issue.  In denying relief on this claim, the court relied upon the defense's failure to properly preserve this issue by requesting a due diligence hearing or a new trial. *See  Love*, 2004 Mich. App. LEXIS 3110, *10-14. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carine*s, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Dixon*, 217 Mich. App. 400, 409, 552 N.W.2d 663 (1996); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

In his reply brief, Petitioner asserts that no default was imposed because the state appellate court's "plain error" review amounted to a merits review.  A state court does not waive a procedural default, however, by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Accordingly, so-called "plain error" review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walke*r, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently  rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929

F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based upon a procedural default — the failure to object to the alleged instances of prosecutorial misconduct.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, in neither his principle brief nor his reply brief, does Petitioner allege cause to excuse the default of this claim. Accordingly, review of Petitioner's fourth claim is procedurally barred.

### E. Claims Raised on State Collateral Review

The remainder of Petitioner's claims were first presented to the state court in his motion for relief from judgment. Petitioner asserts in his fifth claim that the trial court erred in allowing the prosecutor to admit evidence of the April gunfight between Petitioner and the victim. Petitioner's sixth claim raises additional allegations of prosecutorial misconduct. Similarly, Petitioner's seventh claim alleges new claims of ineffective assistance of trial counsel. Finally, Petitioner's eighth claim asserts that his appellate counsel was ineffective for failing to raise these claims in the state courts during Petitioner's appeal of right.   Respondent asserts that review of these claims is procedurally barred.

The Michigan Court of Appeals and Michigan Supreme Court denied relief with respect to these claims by citing Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which

-20-

could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. See MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has recently held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

In this case, the state trial court denied relief on procedural grounds. The trial court denied relief because "defendant had not fulfilled his burden under Rule 6.508(D)(3)(a) to establish good cause for his failure to raise the above issues on appeal or in a prior motion." Trial Court Opinion, at 2. Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, *supra*.

Petitioner's eighth habeas claim asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of his other claims. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of appellate counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether

-21-

counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner,"

-22-

defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues in Petitioner's direct appeal. Indeed, Petitioner is still presenting those same claims in the instant petition, asserting that they entitle him to habeas relief. Petitioner has not shown that appellate counsel's strategy in presenting those claims (Petitioner's lead claims in the present petition) and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable.

Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default, and these claims are barred from review.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at

336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.

## V. Conclusion

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

S/Lawrence P. Zatkoff                    
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  August 10, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 10, 2011.

S/Marie E. Verlinde                    
Case Manager
(810) 984-3290